IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| KIMBERLY STRINGER,<br><br>  Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>  Defendant. | CASE NO. 1:25-cv-2475<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br><br>**MEMORANDUM OPINION<br>AND  ORDER** |

Plaintiff Kimberly Stringer filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her application for disability insurance. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. For the following reasons, I affirm the Commissioner's decision.

**Procedural background**

In July 2023, Stringer filed an application for disability insurance benefits alleging a disability onset date of December 23, 2022.[1] *See* Tr. 930. In pertinent part, Stringer claimed that she was disabled and limited in her ability to work due to: complications from surgery to her left knee, breathing

---

[1]  "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

issues, high blood pressure, long-term covid, diabetic, and sleep apnea. *See* Tr. 970. The Commissioner denied Stringer's application initially and on reconsideration. *See* Tr. 862, 868.

In May 2024, Stringer requested a hearing. Tr. 871. In January 2025, Administrative Law Judge ("ALJ") Amy Budney held a telephonic hearing. *See* Tr. 802. Stringer appeared, testified, and was represented by counsel at the January 2025 hearing. Tr. 806–826. Qualified vocational expert William Braunig also testified. Tr. 826–832. In February 2025, the ALJ issued a written decision finding that Stringer was not entitled to benefits. Tr. 783.

In March 2025, Stringer appealed the ALJ's decision to the Appeals Council. *See* Tr. 926. In September 2025, the Appeals Council denied Stringer's appeal, making the ALJ's February 2025 decision the final decision of the Commissioner. Tr. 1–2; *see* 20 C.F.R. § 404.981.

Stringer timely filed this action in November 2025. Doc. 1. In it, she presents four issues for review:

1. Whether the ALJ failed to provide a logical bridge between the evidence and the RFC assessment which failed to include any manipulation limitations.

2. Whether the ALJ committed reversible error by failing to find Ms. Stringer's mental health conditions as sever impairments.

3. Whether the ALJ improperly evaluated Ms. Stringer's pain pursuant to SSR 16-3p.

4.    Whether new and material evidence, submitted after the hearing, warrants remand.

Doc. 7, at 1.

**Evidence**[2]

*Personal and Vocational Evidence*

Stringer was born in September 1959 making her approximately 63 years old on the alleged onset date. Tr. 930. She obtained a college education and previously worked as a utilization review coordinator and general duty nurse. Tr. 971, 796.

*Medical Evidence*

The ALJ summarized the medical evidence as follows:

> Records from University Hospitals show treatment for asthma (Exhibit 1F). A home sleep apnea test on April 13, 2023, supported the diagnosis of severe obstructive sleep apnea (Exhibit 4F/6-11). Claimant was prescribed PAP in November 2023 was prescribed (Exhibit 5F/8).
>
> Claimant was diagnosed with diabetes in 2023. On July 6, 2023, it was noted claimant took Metformin for a few weeks, then discontinued it. Claimant was started on Ozempic injection .25 mg once a week (Exhibit 12F/58-59).
>
> Claimant underwent a left knee total arthroplasty on May 4, 2022 (Exhibit 12F/357-359). Claimant followed up with doctors after surgery. On February 17, 2023, claimant reported increased swelling on the medial aspect of the knee. Claimant was a floor

---

[2]    The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs and relevant to their arguments.

3

nurse and had been going up and down a lot of stairs because the elevator at work was out. Otherwise, claimant's knee felt good. Claimant walked with an antalgic gait, but coordination and balance were intact.

Motrin 800 was sent to the pharmacy. Claimant could also ice as needed (Exhibit 12F/103-104). At a visit on April 28, 2023, claimant continued to have soft tissue pain around the knees and reported difficulty with stairs. Claimant was going to go back to physical therapy. It was noted claimant has to walk significant distances at work. On physical exam, claimant walked with a non-antalgic gait. Range of motion was 0-100, after which claimant has calf and thigh impingement. X-rays reviewed that day show excellent alignment of the knee arthroplasty with no signs of loosening or failure (Exhibit 1F/20). An x-ray of the right knee on February 15, 2024, showed mild tibiofemoral osteoarthritis (Exhibit 12F/155-156).

Claimant receives treatment at the COVID Recovery Clinic at University Hospitals. On March 13, 2023, claimant's symptoms included brain fog, fatigue, shortness of breath/chest tightness, palpitations, constipation, joint pain, depression and hypertension. Claimant was to continue Meloxicam for joint pain. Claimant's symptoms were likely related to each other and require further work up. Claimant weighed 198 pounds with BMI 36.21. Musculoskeletal exam showed intact range of motion and normal strength (Exhibit 1F/1-8).

Claimant has also been treated at Cleveland Clinic Pain Management. Andrew Hanson, MD, saw the claimant on October 24, 2023, for neck and shoulder pain. On exam, there was tenderness in the neck, but good range of motion. There was no pain on palpation of the lumbar spine. The lumbar spine showed full range of motion without reproducible pain. Straight leg raising was negative bilaterally. Motor strength and tone were 5/5 throughout. Gait was normal. An MRI of cervical spine in 2021 that

4

showed canal stenosis. Dr. Hanson scheduled a CESI, started the claimant on Elavil 10 mg at bedtime and referred the claimant to physical therapy (Exhibit 3F/1-6). At follow up on January 5, 2024, claimant continued with neck pain that radiates to left shoulder, down to elbow and left side chest/rib cage and around to upper back. Claimant was starting to notice some radiation over right side/shoulder. Claimant had left rotator cuff surgery over 5 years ago. Claimant was starting physical therapy next week through CCF Euclid. On physical exam, there was good, supple range of motion in the neck. There was tenderness to palpation and tight musculature was noted. Motor strength and tone were 5/5 throughout. Gait was normal. There were waiting for approval of CESI from Workers' Compensation (Exhibit 9F/7-12). On May 28, 2024, it was noted Workers Comp. denied the CESI. On exam, claimant weighed 181 pounds with BMI 33.10. Motor strength and tone were 5/5 throughout. Sensation was intact to light touch. Gait was normal. Spurling's test was positive bilaterally. Claimant was started on Topamax (Exhibit 17F/4-11). At follow up on October 15, 2024, claimant has continued neck pain with radiculopathy consistent with cervical stenosis. Claimant also continues with myofascial pain. Claimant weighed 186 pounds with BMI 34.01. There was supple range of motion in the neck with pain on palpation of cervical paraspinal muscles. There was no pain on palpation of the lumbar spine with full range of motion without reproducible pain. Neurological exam was intact. Topamax was increased., Claimant was to continue physical therapy exercises (Exhibit 23F/45-51). On November 8, 2024, claimant had continued neck pain. Claimant also reported weakness in left upper extremity with dropping things. Claimant again showed good range of motion in the neck with pain with flexion, extension and rotation right and left. Motor strength and tone were 5/5 throughout. Sensation was intact. Gait was normal. (Exhibit 23F/25-30). Claimant received a cervical epidural steroid injection on December 12, 2024 (Exhibit 23F/10-12).

Dorothy Bradford, MD, examined the claimant at the request of the State agency on October 4, 2023. Claimant told Dr. Bradford she had COVID-19 in 2021. Since then, claimant has had a hard time taking deep breaths and has developed asthma. Claimant has seen pulmonary and cardiology with normal results. Claimant goes to the long COVID clinic. Claimant had a left knee replacement in 2021, and the knee is still stiff and sore. Claimant does not use a mobility aid. Claimant weighed 206.13 pounds with BMI 37.7. Respiratory exam showed lungs were clear to auscultation bilaterally with no wheezes, rales or rhonchi. No breathlessness with activity was noted. On musculoskeletal exam, there was normal strength in all muscle groups. There was normal range of motion of all joints. Claimant's gait was normal. On neurologic exam, motor strength was 5/5 and equal in all four extremities. Deep tendon reflexes were +2/4 and equal bilaterally. There was no focal neurological deficit. Spirometry showed a restrictive pattern, likely due to heavy chest wall (Exhibit 2F).

An x-ray of the right shoulder in September 2023 showed moderate degenerative arthritis at the acromioclavicular joint (Exhibit 3F/2; 10F/24-27).

Claimant went to the emergency department on February 15, 2024, with a complaint of right knee pain for 5 days. X-rays did not show acute findings. Claimant was given Toradol and Tylenol for pain. Claimant was advised to wear a knee compression sleeve (Exhibit 12F/27-29). Claimant followed up on March 15, 2024. Claimant said knee pain was getting worse and it felt like her knee was buckling. Claimant was given a hinged knee brace to help with ambulation. Claimant should wear-bear as tolerated and elevate when able to order to help with some of the swelling (Exhibit 12F/24-26). Claimant received a cortisone injection in the right knee on March 22, 2024 (Exhibit 12F/23-24). An MRI of the right knee on March 29, 2024, showed a complex tear of the medial meniscus posterior horn with osteoarthrosis (Exhibit 12F/148-152).

An MRI of the cervical spine on October 28, 2024, showed progression of degenerative disc disease at C3-C4 where previously seen small central protrusion is now larger central extrusion. Neuroforaminal stenosis remains most pronounced and severe on the left and moderate to severe on the right at C4-C5 and moderate at on the right at C5-C6 (Exhibit 23F/29).

Tr. 792–794.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2026.

2. The claimant has not engaged in substantial gainful activity since December 23, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis of the right knee; meniscus tear right knee; status post left total knee arthroplasty; long COVID; asthma; obesity; chronic fatigue; obstructive sleep apnea; insomnia; degenerative disc disease of the cervical spine with spondylosis and stenosis; osteoarthritis of the AC joint of the right shoulder; and diabetes mellitus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

7

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except claimant can frequently balance and stoop. Claimant can occasionally climb ramps and stairs, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, and scaffolds. Claimant can be frequently exposed to extreme cold, extreme heat, humidity, as well as dust, odors, fumes and pulmonary irritants. Claimant can frequently use foot controls. Claimant can frequently reach right and left, overhead and in all directions.

6. The claimant is capable of performing past relevant work as a utilization review coordinator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2022, through the date of this decision (20 CFR 404.1520(f)).

Tr. 788–796.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden

9

shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

10

2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. The ALJ's decision is supported by substantial evidence.*

At the outset, while Stringer presents four distinct issues, three of those issues amount to a dispute over the ALJ's weighing of the evidence and an assertion that the ALJ's decision is inadequately supported. To succeed on her first three issues Stringer thus has to show in the first instance that the ALJ erred or that her decision is not supported by substantial evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

*First,* Stringer asserts that the ALJ failed to articulate a "logical bridge" between the evidence and the ultimate RFC. *See* Doc. 7, at 12–14. Specifically, Stringer argues that the ALJ needed to provide a more detailed explanation of why she did not include in the RFC certain manipulative limitations, which she believes the medical evidence supported. *Id.* at 13.

For starters, like many Social Security plaintiffs, Stringer refers to the *logical bridge* doctrine as if there is a special obligation for a Social Security

11

ALJ to "build a logical bridge" between her analysis and conclusion. Doc. 7, at 11–13. This reference to a *logical bridge* apparently first appeared in this Circuit in *Allshouse v. Commissioner of Social Security*, No. 07-12516, 2008 WL 4372646, at \*9 (E.D. Mich. Sept. 19, 2008), which relied on Seventh Circuit precedent. But the idea that an adjudicator's logic should be discernible is not a special feature of Social Security cases. Indeed the line of Seventh Circuit precedent from which the phrase emerged began outside the Social Security context as metaphor to make the generally applicable point that a court "cannot defer to something that is not based on facts–logical facts—in the record." *J.C. Penney Co. v. NLRB*, 123 F.3d 988, 996 (7th Cir. 1997) ("we can only defer to the ALJ's findings when the reasons for his decision build an accurate and logical bridge between the evidence and the result. Here, the bridge is out."). So the idea behind the metaphor is not a doctrine. Rather it is a truism. It also, in Stringer's instance, does not provide a basis for remand because she does not show that the ALJ's decision was not supported by substantial evidence. *See Warner*, 375 F.3d at 390.

Indeed, as the Commissioner points out, Stringer did not allege manipulative limitations in her initial application, *see* Tr. 970, when she sought review of the Commissioner's initial denial, *see* Tr. 988, or when she sought review by the ALJ, *see* Tr. 998. And Stringer ignores contrary medical evidence. In October 2023, Dorothy Bradford, M.D., rated Springer's dexterity, including her ability to grasp and manipulate small and large objects as five

out of five. Tr. 1133. Dr. Bradford similarly rated Springer's wrist, thumb, and finger strength as five out of five. Tr. 1130. In December 2023, Gail Mutchler, M.D., determined that Springer had no manipulative limitations. Tr. 841. In April 2024, Leon Hughes, M.D., determined that Springer did not have manipulative limitations. Tr. 850

Given this evidence, it is apparent that Stringer simply believes that the medical evidence and her testimony supported greater limitations in the area of handling and fingering. *See* Doc. 7, at 12–13. Entertaining this argument would require that the Court accept Stringer's weighing of the evidence over the ALJ's—a proposed weighing that does not account for the medical evidence noted above which contradicts Stringer's account. But the task of weighing the evidence falls on the ALJ, not Stringer or this Court. *See* 20 C.F.R. § 404.1520c(a) (explaining how *the ALJ* will consider and weigh medical opinions and prior administrative medical findings) (emphasis added); *see also Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020 ("[T]his court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.") (citation omitted). Moreover, the fact that Stringer can point to evidence in the record that might support her desired limitations does not mean that substantial evidence does not support the ALJ's limitations. *See Jones*, 336 F.3d at 477.

In support of her first issue, Stringer also cites Social Security Ruling 85-15, 1985 WL 56857 (S.S.A. Jan. 1, 1985), which provides guidance on the

13

meaning and affect of nonexceptional impairments. To this end, Ruling 85-15 generally explains that "[n]onexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do."

*Id*. at 2. As to manipulative limitations, Ruling 85-15 says:

> Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations. "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work. The varying degrees of loss which can occur may require a decision-maker to have the assistance of a VS. However, a VS would not ordinarily be required where a person has a loss of ability to feel the size, shape, temperature, or texture of an object by the finger-tips, since this is a function required in very few jobs.

*Id*. at *7.

Notably, while Ruling 85-15 recognizes the potential *significance* of manipulative limitations, it does not impose any duty on the ALJ to engage in a particular analysis or provide specific requirements for how an ALJ must articulate her evaluation of these limitations. *Id*. Additionally, it would not

14

have required the ALJ to ignore the medical opinions that Stringer does not have the limitations that she now opines are evident from the record. So, to the extent that Stringer argues that the ALJ erred in relation to some guidance provided in Ruling 85-15, that argument fails.

*Second*, Stringer argues that the ALJ erred by failing to find that her mental health conditions amounted to severe impairments. *See* Doc. 7, at 14–16. Specifically, she claims that the ALJ disregarded substantial evidence of Stringer's mental health conditions which, in Stringer's interpretation, showed that she was significantly limited in her functional mental abilities. *See id.* at 14. She also claims that the ALJ instead improperly focused on Stringer's admittedly normal mental health examinations. *Id.* at 15. At step two of the sequential evaluation, the ALJ determines whether a claimant has a "severe" impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that significantly limits the claimant's physical or mental ability to do "basic work activities." *See* 20 C.F.R. § 416.920(c). An impairment is "not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243, n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).

Here, the ALJ found that Stringer's major depressive disorder and generalized anxiety disorder were non-severe. Tr. 789. In doing so, the ALJ explained that she "considered the broad functional areas of mental

15

functioning set out in the disability regulations for evaluating mental disorders." Tr. 789–90. She then explained her evaluation of those areas and why she concluded that Stringers's mental health impairments "cause[d] no more than 'mild' limitation[s]." Tr. 790. The ALJ also explained that she found persuasive the opinion offered by Kari Kenned, PsyD., that Stringer's major depressive disorder and generalized anxiety disorder were non-severe. Tr. 795. The ALJ then explained why Dr. Kenned's opinion was persuasive. Tr. 795. Stringer, however, ignores the ALJ's explanation of her evaluation of the functional areas and Dr. Kenned's opinion. So there is no need to discuss these matters. Needless to say, an argument that the ALJ erred, which ignores the basis for the ALJ's decision, is not likely to succeed.

As with Stringer's first issue, Stringer's second dispute amounts to a disagreement with the ALJ's weighing of the evidence. This is apparent because, in addition to ignoring the basis for the ALJ's decision, Stringer spends about half of her argument citing evidence in the record that she believes supported a different finding from the one that the ALJ reached. *See id*. at 14–15. While the evidence that Stringer focuses on *might* support greater mental limitations in her RFC or a different finding at Step 2, that does not mean that remand is appropriate. *Jones*, 336 F.3d at 477.

Worse, it's not clear why this argument matters. When an ALJ finds severe and non-severe impairments at step two and continues with the later steps in the sequential evaluation process, any error at step two is harmless.

16

*Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (the failure to find an impairment severe at step two is harmless error when the ALJ continues through the remaining steps of the evaluation and can consider non-severe impairments when assessing an RFC); *see Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (" '[T]he fact that some of [a claimant's] impairments were not deemed to be severe at step two is…legally irrelevant' where other impairments are found to be severe.") (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5).

Here, the ALJ found severe and non-severe impairments at step two and then continued with the following steps in the sequential evaluation process. Even if Stringer were correct that the ALJ erred, therefore, that error was harmless. *Maziarz*, 837 F.2d at 244.

*Third*, Stringer argues that the ALJ failed to comply with the two-step evaluation process outlined in Social Security Ruling 16-3p when considering her pain symptoms. *See* Doc. 7, at 16–18.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's

17

statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. By regulation, factors considered include:

> i.  daily activities;
>
> ii.  the location, duration, frequency, and intensity of pain or symptoms;
>
> iii.  precipitating and aggravating factors;
>
> iv.  the type, dosage, effectiveness, and side effects of any medication;
>
> v.  treatment, other than medication, to relieve pain;
>
> vi.  any measures used to relieve pain; and
>
> vii.  other factors concerning … functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). "The ALJ need not analyze all seven factors," listed in the regulation "but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

Here, the ALJ introduced the two-step analysis established by Ruling 16-3p and proceeded to discuss many of the factors listed in that Ruling. Specifically, the ALJ noted Stringer's testimony regarding her daily activities and some difficulties she experienced in conducting them. *See e.g.*, Tr. 792

18

(describing Stringer's testimony about grocery shopping and carrying her purse); Tr. 793 (summarizing medical records including Stringer's subjective statements regarding knee pain and difficulty with stairs). Additionally, the ALJ discussed precipitating and aggravating factors, *id*. (noting Stringer's testimony about lingering COVID complications and that some tasks take longer to do than before), and the treatments and measures employed to address Stringer's pain, *see e.g.*, Tr. 797 (discussing treatment at Cleveland Clinic Pain Management including physical therapy and prescription medication).

Nevertheless, Stringer begins that the ALJ "failed to specifically evaluate [the] evidence, particularly: daily activities, medication and treatment, functional limitations and pain triggers and aggravating factors." Doc. 7, at 17. Perhaps recognizing that Ruling 16-3p does not impose a mandatory articulation requirement, Stringer later amends her argument to claim that the "ALJ's analysis failed to meaningfully address these factors and relied on selective findings rather than a comprehensive review of the record." *Id*. at 18. In support of her argument, however, Stringer simply provides her own evaluation of evidence related to her pain and other symptoms, *see id*. at 17–18, and claims that the ALJ did not "sufficiently consider" Stringer's pain, *id*. at 18. Nothing that Stringer cites, however, shows that the ALJ failed *to consider* Stringer's pain or any of the evidence specifically cited in her brief. Indeed, the ALJ is not required to cite all of the evidence, *see Dickey-Williams*

19

*v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom is not an error"), and a failure to cite evidence does not show that the ALJ failed to consider the evidence, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

At bottom, Stringer's argument simply asks the Court to consider the evidence of pain that she highlights and give it greater weight than the ALJ did. But it is not this Court's role to weigh, let alone reweigh, the evidence. *See e.g.*, 20 C.F.R. § 404.1520c(a). Additionally, the ALJ stated that she considered the Ruling 16-3p factors, Tr. 791, and the ALJ's statement is presumed true. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

In sum, none of Stringer's first three arguments provide a basis for remand.

20

> 2. *Remand is not warranted based evidence that Stringer submitted after the ALJ issued her written decision.*

Stringer's final argument is that, based on evidence that she submitted after the ALJ issued her decision, the Court must remand to allow the Commission to consider her evidence. Doc. 7, at 19. Essentially, Stringer asks for a "sentence six" remand based on new evidence that she submitted to the Appeals Counsel about surgery on her cervical spine. *See id.*

A court's authority to remand a case to the Social Security Administration is outlined in 42 U.S.C. § 405(g)). *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). This provision contains two sentences that authorize a remand. *Id.* A "sentence four" remand[3] occurs when a court finds that the ALJ's decision is faulty. *Id.* In that case, the court's review is limited to the evidence that was before the ALJ at the time of the decision. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). A "sentence six" remand, on the other hand, is a "prejudgment" remand in which the court sends the case back to the Commissioner to consider "new and material evidence that for good cause was not previously presented to" the Commissioner. *Hollon*, 447 F.3d at 483; *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative

---

[3] The names of these two types of remands refer to the fourth and sixth sentences in 42 U.S.C. § 405(g). *See Melkonyan v. Sullivan*, 501 U.S. 89, 97–98 (1991) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 623–29 (1990)).

proceeding." *Foster*, 279 F.3d at 357 (6th Cir. 2001) (quoting *Finkelstein*, 496 U.S. at 626). It is "'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And a claimant shows "'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (quoting *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984)). The claimant bears the burden of showing that these requirements are met. *Id.*

For starters, at least one of records that Stringer explicitly cites was created before the ALJ issued her decision. *See* Doc. 7, at 19 (citing Tr. 682 (dated January 16, 2025)). Further, Stringer's argument tends to show that her new evidence is not material. She says that the evidence shows that she "underwent a C4-C5 anterior cervical diskectomy and fusion," and that "[d]espite the surgery, she continued to report persistent neck pain and left arm weakness at post-operative follow-ups." Doc. 7, at 19 (citing Tr. 180, 265, 587). According to Stringer, this evidence "documents the failure of conservative treatment and the necessity of surgical intervention for Ms. Stringer's cervical radiculopathy, directly reflecting the severity of her condition during the time considered by the ALJ." *Id.*

22

The ALJ, however, was aware of Stringer's left arm weakness, *see* Tr. 793, and the "pronounced and severe" nature of Stringer's stenosis at C4-C5, Tr. 794. Stringer doesn't explain how evidence that these issues continued after the ALJ's decision would have changed the ALJ's decision. And she doesn't point to any place in the ALJ's decision where the ALJ relied on a supposedly conservative course of treatment in evaluating Stringer's left-arm weakness or her neck pain.

Stringer also does not develop any argument related to the "good cause" requirement. *See* Doc. 7, at 19.  As the Sixth Circuit has explained:

> The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the "good cause" requirement. This Court takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing."

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012) (quoting *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). Because she hasn't asserted "a valid reason for [her] failure to obtain the evidence" earlier, Stringer hasn't met her burden to show that she meets the "good cause" requirement for a remand. *See id; Foster*, 279 F.3d at 357 (the claimant bears the burden of showing that she meets all of the remand requirements). Without more, Stringer's conclusory argument does not provide a basis for sentence six remand.

Further, as the Commissioner points out, Doc. 9, at 11–12, and as the Appeals Counsel suggested, Tr. 2, the records that were created after February 10, 2025, do nothing to show whether Stringer was disabled on or before that date. And denial of remand at this juncture still leaves available the possibility for Stringer to file a new application, which could include this more recent evidence, for a period after the ALJ's decision at issue. *See* Tr. 2.

**Conclusion**

For all of the reasons stated, I affirm the Commissioner's decision.

Dated: June 4, 2026

*/s/ James E. Grimes Jr.*

James E. Grimes Jr.
U.S. Magistrate Judge